**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

**ROXANNE ANDLER,**
individually and on behalf of others
similarly situated and the
Wisconsin Rule 23 Class,

Court File No. 3:11-cv-79

District Judge William M. Conley

        Plaintiff,

v.

**ASSOCIATED BANC-CORP,**

        Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    INTRODUCTION**

The parties seek final approval of the class action settlement (the "Settlement") preliminarily approved by the Court on October 4, 2011. (ECF No. 54.) The Settlement is a fair, reasonable and adequate resolution of the claims brought in this matter. The parties provided detailed information about the Settlement to the Rule 23 Class and to the Plaintiffs, and the notice process was more than sufficient as evidenced by the 91% response rate and the fact that no Plaintiff or Rule 23 Class Member opposes or objects to the Settlement. With this Motion, the parties respectfully request that the Court enter an Order (1) granting final approval of the Settlement, finding that it is fair, reasonable, and adequate; (2) approving the incentive award, as set forth in the Settlement; (3) approving Class Counsel's Petition for Attorneys' Fees and Costs (briefed separately from this Motion); and (4) dismissing the action with prejudice.

## II. STATEMENT OF FACTS

### A. **Factual and Procedural Background**

The factual and procedural background of this case was detailed in the parties' memorandum of law submitted in support of their Joint Motion for Preliminary Approval of Proposed Class Action Settlement and Certification of the Settlement Class (the "Motion for Preliminary Approval"). (ECF Nos. 51-53.) As explained therein, this is a collective and class action lawsuit for unpaid overtime wages and minimum wages brought by Plaintiff Roxanne Andler (the "Named Plaintiff"), on behalf of herself and other similarly situated Residential Loan Officers ("RLOs") employed by Defendant Associated Banc-Corp (hereinafter "Defendant"). In the Complaint, the Named Plaintiff alleged that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), and Wis. Stat. § 103.001 and 104.001, *et seq.* and the rules promulgated there under, Wis. Admin. Code § DWD 272.001 and 274.01 *et seq.*, (the "Wisconsin Minimum Wage and Overtime Statutes") by misclassifying her and other similarly situated RLOs as exempt and thus failing to pay overtime wages during weeks in which they worked more than forty hours and, at times, minimum wages. (See ECF No. 1.) The Named Plaintiff sought to represent a nationwide opt-in collective class of RLOs under the FLSA and a Wisconsin opt-out class of RLOs under the Wisconsin Minimum Wage and Overtime Statutes. (Id.)

The parties stipulated to Conditional Certification and Judicial Notice pursuant to 29 U.S.C. § 216(b) on April 29, 2011. (ECF No. 17.) On May 24, 2011, this Court entered the parties' stipulation, conditionally certifying all individuals who were employed by Associated as RLOs at any time from May 24, 2008 to July 18, 2010. (ECF No. 19.) Of the 184 RLOs identified by Defendant, 47 joined the case and are currently part of the conditionally certified

collective class (collectively, "Plaintiffs"). (Declaration of Timothy C. Selander ("Selander Decl."), ¶ 3.)

The parties reached the Settlement after participating in a day long mediation session on August 23, 2011 with experienced litigator and mediator Robert Reinhart, Esq. of Dorsey & Whitney LLP. (Id., ¶ 4.) As explained more fully below, the parties believe the Settlement is fair, reasonable, and adequate and that it satisfies all criteria for settlement approval under Seventh Circuit law.

### B. The Settlement Terms[1]

The total settlement amount to be paid by Defendant is $1,275,000.00. Importantly, this is a non-reversionary settlement, meaning that no portion of the total settlement amount reverts to Defendant. In practical terms, this means that any settlement amount initially allocated to an unresponsive Rule 23 Class Member will be divided equally among the participating Plaintiffs and Rule 23 Class Members, rather than being returned to Defendant. Non-reversionary settlements like this one are favored by the courts. See, e.g., Butler v. Am. Cable and Tel., LLC, 2011 WL 2708399, at *10 (N.D. Ill. July 12, 2011) (denying motion for preliminary settlement approval on multiple grounds, including the inclusion of a settlement term giving the defendant a full reversion of unclaimed funds). Here, eleven (11) Rule 23 Class Members with initial settlement allocations totaling $42,297.27 chose not to respond to the Settlement Notice. (Selander Decl. ¶ 12.) Because this is a non-reversionary settlement, those funds will be divided equally among each of the forty-seven (47) participating Plaintiffs and sixty-three (63) participating Rule 23 Class Members, increasing each of their initial settlement allocations by $384.52. (Id.)

---

[1] The parties filed a copy of the Settlement Agreement with their Motion for Preliminary Approval. (See ECF No. 52-1.)

Before deductions for attorneys' fees and costs, the Settlement provides each Plaintiff with a full recovery of all minimum wage damages, five hours of overtime wages for all eligible weeks, and full liquidated damages. (Id., ¶ 13.) Similarly, the Settlement provides each Rule 23 Class Member with a full recovery of all minimum wage damages, five hours of overtime wages for all eligible weeks, and one-half of the liquidated damages available under Wisconsin state law. (Id.) After deductions for attorneys' fees and costs and after the reallocation described above, the average Plaintiff recovery is approximately $9,100; the average Rule 23 Class Member recovery is approximately $6,600. (Id., ¶ 14; Ex. B.) Settlement payments to the forty-seven (47) Plaintiffs and sixty-three (63) participating Rule 23 Class Members total approximately $841,000, or approximately 66% of the total settlement amount. (See Exhibit B; Selander Decl., ¶ 16.)

As described in the parties' Motion for Preliminary Approval, Class Counsel calculated the settlement allocations based on information provided by Defendant specific to each Plaintiff and Class Member. (See ECF No. 52.) Specifically, the allocations are based on each individual's dates of employment as a RLO during the statutory period, their earnings during that period, and their statutory period (based on their involvement as either a Rule 23 Class Member or a Plaintiff). (Id.) In addition, Class Counsel reviewed each individual's payroll to determine which, if any, pay periods they did not receive minimum wages. (Id.) The only factor in the allocation formula that was not individualized was the number of overtime hours worked each week. (Selander Decl., ¶ 6.) Records of hours worked were not available as Defendant did not require its RLOs to record their hours. (Id.) During the settlement negotiations, the parties agreed that an award of five (5) hours of overtime for each eligible week was appropriate in light of estimates made by various plaintiffs, experience regarding determinations of average overtime

4

calculations in similar cases and taking into account factors such as weeks when no overtime would have been worked due to vacations and other time off.[2] (Id.)

In exchange for the benefits provided for in the Settlement, the Plaintiffs and Rule 23 Class Members signed limited releases which discharge Defendant from claims, causes of action, or liabilities based on or arising out of the allegation that Defendant did not properly compensate its RLOs under any federal, state, or local statutory or common law for all hours worked, including the claims, causes of action and liabilities asserted in this lawsuit. (See Ex. A.) The releases are properly limited to wage-and-hour claims and do not extend to other employment claims for discrimination, wrongful termination, or unpaid commissions. (Id.)

Following the Court's approval of this Motion and its decision related to Class Counsel's fee petition, Defendant will have fourteen (14) days to deliver the settlement checks to Class Counsel. (See ECF No. 54, ¶17(5).) Class Counsel will then promptly mail the settlement checks and communicate with Plaintiffs and Class Members as necessary to ensure that they were delivered to the appropriate address. (Id.) Settlement checks will be valid for ninety (90) days. (Id at ¶17(6).) During that period, Class Counsel will work with Defendant to confirm that the checks were cashed or deposited. Specifically, at Class Counsel's request, Defendant agrees to provide a report of all uncashed checks after sixty (60) days have passed, and Class Counsel agrees to contact any Plaintiff or Rule 23 Class Member by phone, letter, and/or email to remind them of the check-cashing deadline. (Selander Decl., ¶ 7.) After the ninety (90) day deadline, the parties agree that any unclaimed funds will be donated to The Employee Rights

---

[2] Class Counsel and its staff interviewed many of the Plaintiffs in preparation for mediation, questioning them among other things on the average number of hours they worked per week. (Selander Decl. ¶ 5.) Class Counsel shared this information with the Defendant during mediation and the parties' relied on it to develop a fair estimate of overtime hours worked by class members. (Id.)

5

Advocacy Institute For Law & Policy, which is a non-profit tax-exempt charitable and educational organization under Section 501(c)(3) of the Internal Revenue Code. (Id., ¶ 8.)

### C. The Court's Preliminary Approval Order

On September 15, 2011, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class. (ECF Nos. 51-53.) The Court granted that motion on October 4, 2011 (the "Preliminary Approval Order"). (ECF No. 54.) In the Preliminary Approval Order, the Court found that the Settlement was "within the range of possible approval" and "appear[ed] to be the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits." (Id.) The Court also held that the parties' retention and use of Robert Reinhart to mediate the settlement "reinforce[d] the Court's finding that the proposed settlement is non-collusive." (Id.)

The Court certified, for settlement purposes only, the following Rule 23 Class pursuant to Fed. R. Civ. P. 23(e): all persons who worked as Residential Loan Officers for Defendant within the State of Wisconsin at any time between January 28, 2009 and July 18, 2010 and who are not opt-in members of the conditionally certified FLSA class." (Id.) The Court found that the Rule 23 Class met all of the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3). (Id.) Specifically, the Court found that the Rule 23 Class satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). (Id.)

The Court also appointed the Named Plaintiff as Class Representative and Plaintiff's Counsel, Nichols Kaster, PLLP ("Nichols Kaster") as Class Counsel. (Id.) In appointing Nichols Kaster as Class Counsel, the Court found that they met all of the requirements of Rule 23(g). (Id.) More specifically, the Court held that "Nichols Kaster did substantial work

6

identifying, investigating, prosecuting, and settling" the Plaintiffs' and Rule 23 Class Members' claims. (Id.) The Court further held that Nichols Kaster's attorneys have "substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions, and are well-versed in class action and wage-and-hour law." (Id.) Finally, the Court held that the work performed by Nichols Kaster "demonstrates their commitment to the class and to representing the class' interests." (Id.)

As part of the Preliminary Approval Motion, the parties submitted a Proposed Notice of Settlement and detailed the plan for distributing the same to the Rule 23 Class Members and Plaintiffs. In its Preliminary Approval Order, the Court approved of the Proposed Notice of Settlement and distribution plan with one modification. (ECF No. 54.) The Court held that the Notice should inform the Rule 23 Class members that they may be eligible for settlement proceeds provided they act in accordance with the provisions in the Notice. (Id.) The parties subsequently requested a telephone conference with the Court requesting modification to both the language of the Notice of Settlement and the plan of distribution. (ECF No. 55.) Specifically, the parties sought to modify the language of the Notice of Settlement to include each Rule 23 Class Member's settlement amount in the first paragraph, and to reschedule the Final Approval Hearing. (Id.) The Court held a telephone conference to discuss the parties' requests on October 11, 2011 and ultimately granted both requests. (ECF No. 56.)

      **D.**      <u>**The Notice Period and Process**</u>

Class Counsel administered the dissemination of the Notice of Settlement to the Plaintiffs and Rule 23 Class in accordance with the Preliminary Approval Order. (See Exhibit A; Selander Decl., ¶ 9.) On October 14, 2011, Class Counsel mailed the Notice of Settlement to the forty-seven (47) Plaintiffs and seventy-four (74) Rule 23 Class Members. (Id., ¶ 10.) The Notice of

7

Settlement informed the Plaintiffs and Rule 23 Class Members of their settlement amount, the terms of the Settlement, the date, time and location of the Final Approval Hearing, and their right to (1) sign and return a settlement release form to receive the settlement payment; (2) object to the terms of the Settlement; or (3) opt-out of the Settlement, on or before November 14, 2011. (See Ex. A.)

The deadline for Plaintiffs and Rule 23 Class Members to return settlement release forms, to make objections, or to opt-out of the Settlement was November 14, 2011. (ECF No. 56.) As of that date, each of the forty-seven (47) Plaintiffs and sixty-three (63) of the seventy-four (74) Rule 23 Class Members accepted the terms of the Settlement by signing and returning settlement release forms to Class Counsel. (Selander Decl., ¶ 11.) No Plaintiff or Rule 23 Class Member objected to the terms of the Settlement, and no Rule 23 Class Member opted-out. (Id.)

### III. THE PARTIES HAVE SATISFIED THE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER

Under Rule 23(c)(2)(B), a notice must provide:

> [T]the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In the Preliminary Approval Order, the Court held that the form, content, proposed distribution method and timeline of the Notice met the requirements of Rule 23 and due process, and was the best possible notice under the circumstances. (See ECF No. 54.) Where the names and addresses of the Settlement Class Members are easily ascertainable,

as was the case here, individual notice through the mail is "clearly the 'best notice practicable.'" Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

As explained above, Class Counsel was responsible for the administration of the Settlement and mailed the Notice to the Settlement Class Members and Plaintiffs on October 14, 2011. (Selander Decl., ¶ 10.) Prior to the mediation, Defendant reviewed its employee records to determine the names and addresses for each Rule 23 Class Member and provided this information to Class Counsel. (Id., ¶ 9.) Class Counsel then cross-referenced the addresses against the United States Postal Service National Change of Address Database and updated the address information accordingly. (Id.) Three Notices were returned to Class Counsel by the U.S. Postal Service as undeliverable. (Id., ¶ 10.) Class Counsel searched for and found new addresses in each case, then re-mailed the Notice to each Rule 23 Class Member. (Id.) Each of these individuals returned claim forms agreeing to the terms of the Settlement. (Id.) During the notice period, Plaintiffs' Counsel promptly and diligently responded to numerous emails and phone calls from Settlement Class Members. (Id.) Class Counsel also affirmatively contacted Rule 23 Class Members by email and telephone to remind them of the Notice deadline. (Id.) As a result of the parties' diligent efforts to disseminate the Notice, eight-five percent (85%) of the Settlement Class Members responded to the Notice and accepted the settlement offer.[3] (Id. ¶ 11.) Accordingly, the parties' effort to inform the Settlement Class Members more than satisfies the requirements of Fed. R. Civ. P. 23(c)(2)(B).

---

[3] The total response rate for Plaintiffs and Rule 23 Class Members was ninety-one percent (91%). (Selander Decl., ¶ 11.)

## IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Settlement of class action litigation is favored by federal courts. Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996). Although settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate. Id. In Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, the Seventh Circuit held that the district court's primary role in the settlement approval process is to protect the interest of the class and the public:

> Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.

616 F.2d 305, 315 (7th Cir. 1980), overruled on other grounds by Felzen v. Andreas, 134 F.3d 873 (7th Cir. 1998). In determining whether a settlement is fair, adequate, and reasonable, courts in the Seventh Circuit consider a variety of factors, including:

> (a) the strength of plaintiffs' case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed.

In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citing Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 308 (7th Cir. 1985)). The Court must also consider the facts in the light most favorable to settlement. Id. In other words, "the court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." Id. As explained below, after taking all of these factors into consideration, the Court should reach one conclusion: the Settlement is fair, adequate, and reasonable.

### A.     Factor One: The Strength of Plaintiffs' Case Weighed Against the Settlement Offer

One of the key considerations in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendant's offer. See Isby, 75 F.3d at 1199. In considering a proposed settlement however, the Seventh Circuit has cautioned district courts "to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985). Rather, the district court must focus on general principles of fairness and reasonableness, not on the substantive law governing the plaintiffs' claims. Id. A settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net of the costs of trial." Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks and costs of trial); Hiram Walker & Sons, Inc., 768 F.2d at 891 (settlement approved when "there [was] no showing that the amounts received by the beneficiaries was totally inadequate").

Plaintiffs maintain that there are many strong aspects of their case, including the facts that Defendant uniformly reclassified its RLOs from exempt to non-exempt and that Defendant acknowledged that all RLOs performed similar job duties despite paying some a guaranteed salary while others on a straight commission basis. However, Defendant also maintains that there were many strong legal and factual defenses to Plaintiffs' claims and had Plaintiffs continued to litigate the case, they would have faced many difficult substantive and procedural obstacles, including no guarantee of success. In addition to the ever-present risks and costs of trial and appeal, Plaintiffs would have expended significant resources on discovery matters and experts. Further, Plaintiffs faced a number of procedural obstacles that may have prevented them from even obtaining a trial, including motions for decertification of the FLSA collective, Rule 23

11

class certification, and summary judgment. Indeed, the briefing deadlines for these three motions were quickly approaching when the parties ultimately reached this Settlement. Despite these significant risks, Defendant agreed to pay a significant and substantial amount to Plaintiffs and the Rule 23 Class Members. Further, as explained above, before deductions for attorneys' fees and costs, the Settlement provides each Plaintiff with a full recovery of their minimum wage damages, five hours of overtime damages per week, as well as full liquidated damages; likewise, Rule 23 Class Members will receive a full recovery of their minimum wage damages, five hours of overtime damages per week, as well as one-half of their potential liquidated damages. (Selander Decl., ¶ 13.) Accordingly, weighed against the risks, the Settlement provides a substantial and immediate benefit to the Plaintiffs and Rule 23 Class Members.

### B.     Factor Two: The Complexity, Length, and Expense of Further Litigation

In evaluating the second factor, the Court should compare the complexity, length, and expense of further litigation with the immediate benefit of the proposed settlement. In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1019. This case involved the claims of forty-seven (47) Plaintiffs and seventy-four (74) Rule 23 Class Members. With further litigation, Plaintiffs faced the risk that Defendant would seek individualized discovery from the Plaintiffs, as well as class-related discovery. Such discovery would have required Plaintiffs' counsel to expend extensive time and resources responding to written discovery and defending Plaintiff depositions. In addition to difficult, time consuming and costly discovery matters, continuing the litigation would also lead to significant and complex motion practice. Indeed, had the parties not agreed to the Settlement, Plaintiffs would have moved for Rule 23 class certification and Defendant likely would have moved to decertify the FLSA collective. Each party would have vigorously opposed the respective motions. In other words, there was a significant risk that the Plaintiffs and Rule

23 Class Members would not have had the opportunity to proceed to trial, let alone recover the significant amounts at stake in the Settlement. Even assuming that Plaintiffs would have prevailed on their class certification motion, there was a possibility that the Court would have only certified a subset of the overall class. Further risk and expense would have resulted had the parties briefed Defendant's motion to decertify the FLSA collective action. Moreover, before trial, Defendant fully intended to move for summary judgment on its exemption defenses, as well as damages issues like the applicability of the fluctuating workweek, willfulness, and liquidated damages. Weighed against these considerations, the Settlement provides a substantial and immediate benefit to Plaintiffs and the Rule 23 Class Members.

### C. Factor Three: The Settlement Was the Result of Arm's-Length Negotiations Free From Collusion

In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement is "intense, vigorous, and at arm's length." In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1020. Such arm's-length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. Id. (giving "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"); Alliance to End Repression v. City of Chicago, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); Susquehanna Corp. v. Korholz, 84 F.R.D. 316, 321 (N.D. Ill. 1979) (a settlement proposal arrived at after arm's-length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate); Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhouse Coopers, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("[t]he opinion of competent counsel weighs in favor of approval of a settlement.").

Although the parties were able to avoid the extensive motion practice or discovery that can occur in wage-and-hour class actions, the parties were at all times adversarial, and reached the Settlement only after engaging in months of investigation, the review of thousands of documents produced in discovery, and preparing detailed damages analyses. Neither the parties nor their counsel should be punished for litigating the case efficiently.

Finally, the parties' respective representatives are experienced in the litigation, certification, trial, and settlement of wage-and-hour cases, including class actions similar to this one. After the parties agreed to attend a mediation session, they retained a well-respected mediator with vast experience in wage-and-hour litigation and negotiations. All counsel involved in the litigation believe that the Settlement is fair, reasonable, and adequate in light of their knowledge of the claims in this case, wage-and-hour law, and their experience in past litigation. Accordingly, the Court should find that this factor weighs in favor of granting final settlement approval.

### D.      Factor Four: Opinion of Counsel

In the Preliminary Approval Order, the Court appointed Nichols Kaster, PLLP as Class Counsel, finding that the firm has "substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions" and that "other Courts have repeatedly found Nichols Kaster to be adequate class counsel in employment law class actions." (ECF No. 54.) Class Counsel, as well as Defendant's Counsel, fully support the Settlement as fair, reasonable, and adequate, and it is appropriate for the Court to place significant weight on this unanimous and strong endorsement. See In re Mexico Money Transfer Litig., 164 F. Supp. 2d at 1020.

### E.  Factor Five: Lack of Objections to the Settlement

Lack of objections from settlement class members to a settlement proposal is a significant factor in determining whether the proposed settlement is reasonable to the class as a whole. Mangone v. First USA Bank, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001); see also Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); Varacallo v. Massachusetts Mut. Life Ins. Co., 226 F.R.D. 207, 251 (D.N.J. 2005) (concluding that "[s]uch a small number of objections in relation to the size of the Class favors approval of the request."); Strougo v. Brazilian Equity Fund, Inc., 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'") (citations omitted); Hispanics United of DuPage County v. Village of Addison, Illinois, 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (finding the settlement fair where a small number of class members objected).

In this case, *not one* Rule 23 Class Member objected to the Settlement or opted-out. Eighty-five percent (85%) of the Rule 23 Class accepted the Settlement, along with each of the forty-seven (47) Plaintiffs. Accordingly, this factor also weighs in favor of granting final approval of the Settlement.

### F.  Factor Six: The Stage of the Proceedings and Discovery Completed

Since filing the Complaint, both parties have investigated the facts regarding the claims of Plaintiffs and the Rule 23 Class as well as Defendant's defenses. Prior to the mediation, the Plaintiffs propounded class-wide Interrogatories and Requests for Production of Documents on Defendant. (Selander Decl., ¶ 17.) In preparation for mediation, the parties exchanged tens of thousands of lines of payroll data and spent a considerable amount of time and resources

15

reviewing and analyzing the data in order to estimate each Plaintiff and Class Member's potential damages. (Id.) Thus, while the parties were able to avoid significant additional discovery or motion practice at this stage of the proceeding, the parties are well aware of the facts and legal issues in the case, as well as the corresponding risks. For these reasons, this factor also weighs in favor of the Court granting final approval.

## V. INCENTIVE AWARDS ARE APPROPRIATE

In the Preliminary Approval Motion, the parties informed the Court that the Settlement called for the Named Plaintiff to receive a $5,000 Class Representative Award[4] and explained that the modest additional payment was reasonable in light of her efforts which resulted in a significant settlement on behalf of the Plaintiffs and Rule 23 Class Members. (See ECF No. 52, p. 8-9.) Awards to named plaintiffs and class representatives are common in class action litigation and have been recognized as an appropriate payment by the Seventh Circuit. Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) (citing In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 571 (7th Cir. 1992)). The proposed award in this case is reasonable in comparison to awards approved by other courts in this Circuit, which range as high as $20,000 per Named Plaintiff. See Berger v. Xerox Corp. Ret. Income Guar. Plan, 2004 WL 287902, at *3 (S.D. Ill. Jan. 22, 2004). Accordingly, the parties' allocation of a $5,000 Class Representative Award to the Named Plaintiff and Class Representative is well within the range of awards commonly approved. (See ECF No. 52, p. 8-9 listing cases.)

Ultimately, the modest award to the Named Plaintiff and Class Representative is appropriate as she took the bold step of initiating this action when others did not. (Selander Decl. ¶ 18.) The significance of this cannot be understated. In this economy, employees,

---

[4] Otherwise known as a "service payment" or "incentive award," in addition to her settlement allocation.

16

whether current or former, are increasingly concerned that the institution of litigation will negatively impact their ability to find employment in the future. (Id.) This is particularly true in light of the public nature of federal litigation, where any current or potential employer can search the internet to find information about potential employees, including whether they have been party to a lawsuit. (Id.) Aware of these risks but in spite of them, the Named Plaintiff went forward with this litigation as the sole employee named in the Complaint. (Id.) Indeed, just a few days after the Complaint was filed, the Wisconsin State Journal published an article about the lawsuit referencing Ms. Andler. (Id.) After filing the Complaint, and through the date of settlement, she provided valuable assistance to Class Counsel when requested, including the production of documents, information, and declarations when asked. (Id.) At all times she was readily available to aid Class Counsel in prosecuting this case. (Id.) As a result of her actions, the opt-in Plaintiffs and Rule 23 Class Members will receive a substantial benefit. Indeed, without her efforts, this case may not have been brought and this settlement may not have been achieved. (Id.) As a result of these efforts, the proposed award is well justified.

## VI. CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

As explained in the concurrently filed Petition for Attorneys' Fees and Costs, Class Counsel seeks an award of thirty-three and one-third percent (33 1/3%) of the total settlement amount and $8,660.12 in costs. Given the time and resources expended by Class Counsel and the resulting benefits received by the Plaintiffs and Rule 23 Class Members, the request is fair, reasonable, and appropriate and should also be approved.

## VII. CONCLUSION

For these reasons, the parties respectfully request that the Court enter the Order attached hereto (1) granting final approval of the Settlement, finding that it is fair, reasonable, and

adequate; (2) approving the Class Representative Award; (3) approving Plaintiffs' Petition for Attorneys' Fees and Costs; and (4) dismissing the action with prejudice.

Respectfully submitted this 2nd day of December, 2011.

/s/Timothy C. Selander
**NICHOLS KASTER, PLLP**
Michele R. Fisher, MN Bar No. 303069
Timothy C. Selander, MN Bar No. 0387016
4600 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870

**Attorneys for Plaintiff, others similarly situated, and the Rule 23 Class**

/s/Sean M. Scullen
**QUARLES & BRADY LLP**
Sean M. Scullen WI Bar No. 1034221
Christopher L. Nickels WI Bar No. 1083481
411 East Wisconsin Avenue, Suite 2040
Milwaukee, Wisconsin 53202-4497
Telephone: (414) 277-5421
Fax: (414) 271-3552

**Attorneys for Defendant Associated Banc-Corp**