### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WISCONSIN

---

**ROXANNE ANDLER,**
individually and on behalf of others
similarly situated and the
Wisconsin Rule 23 Class,

          Plaintiff,

v.

**ASSOCIATED BANC-CORP,**

          Defendant.

Court File No. 3:11-cv-79

District Judge William M. Conley

---

### DECLARATION OF TIMOTHY C. SELANDER IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
_____

TIMOTHY C. SELANDER, states on personal knowledge and under penalty of perjury:

1.      I am an associate attorney at the law firm of Nichols Kaster, PLLP and am one of the attorneys representing the Plaintiffs and Rule 23 Class Members in the above-captioned action.

2.      I am an attorney in good standing with the State Bar of Minnesota and am admitted generally to practice in the Western District of Wisconsin.

3.      As part of the parties' stipulation to conditionally certify this case as a collective action, Defendant Associated Banc-Corp ("Defendant") identified 184 current and former employees who had worked in the Residential Loan Officer ("RLO") position within three years of the Court's Order entering the parties' stipulation. Including the Named Plaintiff, fifty (50) current and former RLOs joined the case by filing consent forms with the Court. Two RLOs subsequently withdrew from the case, and one RLO was found to have worked for Defendant

outside of the statute of limitations.  Accordingly, forty-seven (47) RLOs are participating in this case as Plaintiffs.

4.      On August 23, 2011, the parties attended a mediation session with experienced litigator and mediator Robert Reinhart of Dorsey & Whitney LLP.  Michele R. Fisher, a partner with Nichols Kaster, PLLP, and I attended the session on behalf of Plaintiffs and the class.  After a full day of arm's-length negotiations, the parties agreed to the Settlement.

5.      Clerks, as well as attorneys from Nichols Kaster, PLLP interviewed many of the Plaintiffs in preparation for the mediation session.  Among the questions they asked were questions regarding the estimated average number of hours they worked per week.  We shared this information with Defendant in preparation for and relied upon it during the mediation negotiations.

6.      In the end, the parties agreed to an allocation formula based on each Plaintiff and Class Member's dates of employment as an RLO during the statutory period, their earnings during that period, and their statutory period.  The statutory period varied among the Plaintiffs based on when their consent form was filed with the Court and their dates of employment with Defendant as an RLO.  The statutory period for the Class Members varied only based on their dates of employment with Defendant as an RLO.  As described in Paragraph 5, the only factor in the allocation formula that was not individualized was the number of overtime hours worked per week.  Records of the hours worked by each RLO did not exist as Defendant did not require the RLOs to track the number of hours they worked per week.  As part of the settlement negotiations, the parties agreed that an average of five (5) hours of overtime per week for all Plaintiffs and Class Members was fair and reasonable, particularly given that fact that this

average number accounted for the fact that there were many weeks in which overtime would not have been worked due to vacation or other time off of work.

7.      After Defendant delivers settlement checks to my office, we will continue to work with Defendant, as well as the Plaintiffs and Class Members to ensure that each check is mailed to the correct address, and to the greatest extent possible, cashed or deposited within the ninety day deadline.  As part of that process, at our request, Defendant agrees to produce a list of all Plaintiffs and Class Members who have not yet cashed their settlement checks.  We will then contact these individuals by mail, telephone and/or email to inform them of the deadline and remind them to cash or deposit their settlement checks.  In the event any settlement checks are lost or destroyed, the parties have agreed to cooperate on the process for re-issuing settlement checks.

8.      After the deadline, the parties agree that any unclaimed funds will be donated to The Employee Rights Advocacy Institute For Law & Policy, which is a non-profit tax-exempt charitable and educational organization under Section 501(c)(3) of the Internal Revenue Code.

9.      In accordance with the Settlement and the Court's Preliminary Approval Order, my office administrated the Settlement Notice process (see Exhibit A).  In advance of the August mediation, Defendant provided my office with the names and addresses of each Class Member, along with their dates of employment and earnings information.  My office was already in possession of the Plaintiffs' names and addresses.  Prior to mailing the Notice of Settlement, staff from my office cross-referenced all of these addresses with the United States Postal Service National Change of Address Database and updated the information accordingly.

10.     We mailed the Notice of Settlement to the forty-seven (47) Plaintiffs and seventy-four (74) Class Members on October 14, 2011.  The deadline for Plaintiffs and Class Members to

accept the terms of the Settlement, object, or opt-out was November 14, 2011.  During the notice period, three Settlement Notices were returned as undeliverable by the U.S. Postal Service.  My office immediately worked to find new address information for these three individuals, and resent the Notice of Settlement to each individual.  Each of these three individuals ultimately accepted the terms of the Settlement.  Nichols Kaster staff and attorneys also responded to numerous phone calls and emails during the notice period.  Finally, our staff affirmatively reached out to all unresponsive Plaintiffs and Class Members by email and mail to remind them of the upcoming deadline.

11.     As of November 14, 2011, each of the forty-seven (47) Plaintiffs, and sixty-three (63) of the seventy-four (74) Class Members accepted the terms of the Settlement by signing and returning settlement release forms to my office.  No Plaintiff rejected the terms of the Settlement, and no Class Member objected or opted-out.  In total, eighty-five percent (85%) of the Class Members accepted the terms of the Settlement.  Combining the Class Members and Plaintiffs, ninety-one percent (91%) of the Settlement Class Members responded affirmatively by accepting the terms of the Settlement.

12.     The eleven (11) Rule 23 Class Members who did not respond to the Notice of Settlement by either accepting its terms or opting-out were initially allocated settlement payments totaling $42,297.27.  According to the terms of the Settlement, those funds were divided equally among each of the forty-seven (47) Plaintiffs and sixty-three (63) participating Class Members.  This additional allocation results in each of their initial settlement allocations increasing by $384.52.

13.     Using the agreed upon allocation formula and before deductions for attorneys' fees and costs, each Plaintiff will receive full recovery of all minimum wage damages, five hours

of overtime wages for all eligible weeks, and full liquidated damages on both their minimum wage and overtime damages.  Rule 23 Class Members were allocated a full recovery of all minimum wage damages, five hours of overtime wages for all eligible weeks, and one-half of the liquidated damages available under Wisconsin state law.

14.    After deductions for attorneys' fees and costs, and after the reallocation of the unclaimed funds described in Paragraph 12, the average Plaintiff recovery is approximately $9,100 and the average Rule 23 Class Member recovery is approximately $6,600.

15.    Exhibit B to the parties' Memorandum in Support of Final Approval of Class Action Settlement identifies each Plaintiff's and participating Rule 23 Class Member's initial and final settlement allocation.  The names of the Plaintiffs and Rule 23 Class Members were redacted to protect their privacy.

16.    Of the $1,275,000 to be paid by Defendant, approximately $841,000, or 66% will be paid to the Plaintiffs and participating Rule 23 Class Members.  (See Exhibit B.)

17.    Prior to the mediation session, Plaintiffs' Counsel served written discovery, including Interrogatories and Requests for Production of Documents on Defendant.  In response to these requests, Defendant produced thousands of pages of documents, and tens of thousands of lines of electronic data relevant to Plaintiffs' potential damages. Plaintiffs' Counsel spent significant time and resources reviewing and analyzing this information in preparation for mediation.  Plaintiffs' Counsel also reviewed and analyzed hundreds of pages of documents provided by Plaintiffs related to their job duties, damages, and Defendant's policies and procedures.

18.    This lawsuit may not have been filed, and this settlement may not have been reached, but for the actions of Roxanne Andler, the Named Plaintiff and Class Representative.

Ms. Andler acted when others did not.  The significance of this cannot be understated.  As a plaintiff-side employment law attorney, it is my experience, particularly over the past few years with the downturn in the economy, that employees—whether current or former—are often concerned that having a lawsuit filed in their name will negatively impact their ability to find employment in the future.  Again, in my experience, many individuals choose not to file meritorious lawsuits for this very reason.  These concerns have some merit, particularly in light of the public nature of federal litigation, where any current or potential employer can search the internet (PACER) to find information about potential employees, including whether they have filed for bankruptcy protection or been party to a lawsuit.  Ms. Andler was aware of these risks but chose to go forward with the case as the sole employee named in the Complaint.  The public nature of federal litigation was borne out when, just a few days after the Complaint was filed, the Wisconsin State Journal published an article about the lawsuit referencing Ms. Andler.[1]  Ms. Andler's efforts to aid her attorneys in the prosecution of her claims and the claims of the class continued after we filed the Complaint, and through the date of settlement.  Throughout the litigation she assisted my colleagues and I whenever we asked, including the production of documents, information, and declarations.  She is the rare class action client who answers your call or email no matter what immediately and without fail.  As a result of her actions, the opt-in Plaintiffs and Rule 23 Class Members will receive a substantial benefit.  Indeed, the mere fact of filing the case with Ms. Andler as the lead plaintiff tolled the statute of limitations for the Rule 23 Wisconsin class and led to a nationwide FLSA judicial notice to all RLOs which gave them the opportunity to learn about the case and pursue a claim.  In short, without her

---

[1] http://host.madison.com/wsj/business/article_142821a8-2f2a-11e0-aedd-001cc4c002e0.html (last visited on November 28, 2011).

efforts, this case would not have been brought and this settlement would not have been

achieved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 2, 2011                    /s/*Timothy C. Selander*
                                            Timothy C. Selander, MN Bar No. 0387016
                                            **NICHOLS KASTER, PLLP**
                                            4600 IDS Center, 80 South Eighth Street
                                            Minneapolis, MN  55402
                                            Telephone: (612) 256-3200
                                            Fax: (612) 215-6870
                                            Email: selander@nka.com

                                            **Counsel for Plaintiff, others similarly situated, and
                                            the Rule 23 Class**