IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**ROXANNE ANDLER,**
individually and on behalf of others
similarly situated and the
Wisconsin Rule 23 Class,

          Plaintiff,

Court File No. 3:11-CV-00079-WMC

vs.

**ASSOCIATED BANC-CORP,**

          Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S
PETITION FOR ATTORNEYS' FEES AND COSTS**

**INTRODUCTION**

On January 28, 2011, Plaintiff Roxanne Andler filed this lawsuit on behalf of herself and others similarly situated. In her Complaint, Ms. Andler alleged that her former employer, Defendant Associated Banc-Corp ("Defendant"), classified her and all other Residential Loan Officers ("RLOs") as exempt employees and as a result, did not pay them statutory minimum or overtime wages. Ms. Andler alleged that Defendant's classification of its RLOs violated the minimum wage and overtime pay provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") and similar Wisconsin statutes, Wis. Stat. 103.001, et seq. and the rules promulgated thereunder, Wis. Admin. Code § DWD 274.01 et seq. (collectively, the "Wisconsin Wage Statutes"). She sought to represent an opt-in collective class of RLOs from across the country under the FLSA and an opt-out Rule 23 class of Wisconsin-based RLOs under the Wisconsin Wage Statutes.

In August 2011 this case settled for $1,275,000. The Court preliminarily approved the settlement in October 2011, and notice of the settlement was issued to the Plaintiffs and the Rule 23 Class days later. Each Plaintiff and Rule 23 Class Member had the opportunity to determine for themselves whether they wanted to participate in the settlement, reject the settlement, opt-out of the settlement, or object to the settlement. Every single Plaintiff and the vast majority of the Rule 23 Class Members—85%—accepted the terms of the settlement, including their individually calculated settlement amount. Not one Plaintiff rejected the settlement; not one Rule 23 Class Member objected or opted-out. This overwhelmingly positive response is not surprising given that the settlement provides the participating RLOs with a full recovery of minimum wage damages, five hours of overtime pay damages for all eligible weeks, as well as liquidated damages before deductions for attorneys' fees and costs. Without question, this settlement provides the RLOs with a substantial monetary benefit.

Dockets in wage-and-hour cases like this one are normally replete with contested discovery motions as well as substantive motions for dismissal, FLSA conditional certification, Rule 23 class certification, FLSA decertification, discovery-related motions, and summary judgment.[1] Here, the parties were able to avoid litigating those disputes. But the Court should not assume that the absence of those motions means that the parties did not sharply dispute the

---

[1] See, e.g., Spoerle v. Kraft Foods Global, Inc., No. 07-cv-300-bbc (W.D. Wis. *filed* May 30, 2007) (310 docket entries over 4 years); Kasten v. Saint-Gobain, No. 07-cv-449-bbc (W.D. Wis. *filed* Aug. 15, 2007) ("Kasten I") (270 docket entries over 1.5 years); Kasten v. Saint-Gobain, No. 07-cv-686-bbc (W.D. Wis. *filed* Dec. 5, 2007) ("Kasten II") (240 docket entries over 4 years); Sjoblom v. Charter Comm's, LLC, No. 07-cv-451-bbc (W.D. Wis. *filed* Aug. 15, 2007) (408 docket entries over 2 years); Espenscheid v. DirectSat USA, LLC, No. 09-cv-625-bbc (W.D. Wis. *filed* Oct. 13, 2009) (679 docket entries over 2 years). Class Counsel also refers the Court to the docket in Henry v. Quicken Loans, Inc., No. 04-cv-40346 (E.D. Mich. *filed* May 17, 2004), a case with very similar facts to this one and in which Class Counsel represents the plaintiff loan officers. After more than 6 years of litigation (747 docket entries), the case was tried to a jury in March 2011. The verdict is now being appealed to the Sixth Circuit.

facts and law at issue in this case. Nor should the Court assume that there was little risk in the litigation. The reality is that the parties at all times disputed the crucial facts and legal issues of the case: whether Defendant's RLOs were primarily engaged in outside sales, inside sales, or administrative duties (the legality of the RLO's exempt status), the number of hours worked by Defendant's RLOs (the RLO's potential damages), and whether Defendant made its decision to classify the RLOs as exempt in good faith (the RLO's recovery of liquidated and willful damages). In other words, the parties' willingness and ability to reach the settlement is a sign of the parties' efficient use of resources and their recognition of the inherent risks and expenses of litigation and trial, as well as the benefits of settlement.

Class Counsel thoroughly and efficiently investigated and prosecuted this case for the benefit of the Plaintiffs and the Rule 23 Settlement Class Members. They negotiated the significant settlement before the Court. They carefully and zealously administered the notice of the settlement. They will continue to represent the interests of the Plaintiffs and Rule 23 Class Members even after the settlement is finally approved to ensure that the terms and conditions of the settlement are fully and completely satisfied.

As compensation for their work and the results obtained in this case, Class Counsel respectfully requests an award of attorneys' fees in the amount of 33 1/3% of the total settlement amount, or $425,000, and reimbursement of necessary and appropriate out of pocket litigation expenses in the amount of $8,660.12. As explained in more detail below, Class Counsel's requested award is consistent with the parties' Stipulation of Settlement and Release of Claims (ECF No. 52-1), the market rate for similar cases, past orders of this Court, orders from district courts across the Seventh Circuit, and the fee agreement entered into between Ms. Andler, the Named Plaintiff and Class Representative, and Class Counsel. The award sought will fairly and

reasonably compensate Class Counsel for their efforts to investigate and prosecute the Plaintiffs' and Rule 23 Class Members' claims, taking into account the quality, nature, and extent of Class Counsel's efforts, the results achieved, and the benefits to the Plaintiffs, Rule 23 Class Members and the judicial system for achieving the result through settlement. Accordingly, Class Counsel respectfully requests that the Court award the requested attorneys' fees and costs.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case is undisputed and has been provided to the Court on several occasions, most recently in the parties' Memorandum of Law in Support of their Joint Motion for Preliminary Settlement Approval (ECF No. 52), Stipulation of Settlement and Release of Claims (ECF No. 52-1), and the concurrently filed Memorandum of Law in Support of Final Settlement Approval (ECF No. 60). For the purposes of this brief, Class Counsel will focus the Court's attention on the facts relevant to their petition for an award of attorneys' fees and costs.

Roxanne Andler, the sole Named Plaintiff and Class Representative, retained Class Counsel Nichols Kaster, PLLP ("Class Counsel" or "Nichols Kaster") to represent her and those similarly situated in this lawsuit. (Declaration of Timothy C. Selander ("Selander Decl."), ¶ 23.) Attorneys Michele R. Fisher and Timothy C. Selander served as lead counsel and were aided by several other legal professionals at Nichols Kaster. (Id., ¶ 22; Ex. 1.) The fee agreement entered into by Ms. Andler and Nichols Kaster was a typical contingency fee arrangement. (Selander Decl., ¶¶ 23-24.) Under the terms of the agreement, Nichols Kaster agreed to carry all attorneys' fees and costs involved in the prosecution of the case. (Id., ¶ 23.) In exchange, Ms. Andler agreed that Nichols Kaster would be entitled to 33 1/3% of any recovery, in addition to reimbursement of all necessary costs incurred in the prosecution of the case. (Id.) Importantly,

4

Nichols Kaster would receive no payment for attorneys' fees or reimbursement for any costs incurred if the litigation was unsuccessful. (Id.) As explained further below, this arrangement and request for an award of 33 1/3% of the common fund is consistent with the appropriate market rate for similar litigation in this district and more generally in the Seventh Circuit.

It is Class Counsel's practice to keep detailed and contemporaneous records of all attorney and staff billable time. (Selander Decl., ¶ 21.) These records are attached for the Court's review as Exhibit 1. To date, Class Counsel's lodestar is $101,552.50.[2] (Ex. 1.) As these records indicate, to date, Class Counsel has devoted almost 400 hours on behalf of the Plaintiffs and Rule 23 Class Members in the prosecution of this case. (Id.) Class Counsel conservatively estimates that they will expend 40 additional hours preparing for and attending the Final Approval Hearing, disbursing the settlement payments, and following up with the recipients. (Selander Decl., ¶ 22(n).)

Class Counsel's services include time spent investigating the potential claims against Defendant, including document review and telephone conferences with Ms. Andler and other RLOs. (Ex. 1; Selander Decl., ¶ 22.) Class Counsel also drafted the Complaint and were responsible for drafting and/or editing the pleadings, including the parties' Joint Proposed Discovery Plan (ECF No. 13), Protective Order (ECF No. 14), Stipulation for Conditional Certification and Judicial Notice (ECF No. 17) and Proposed Judicial Notice (ECF No. 17-1), Stipulation for Consent to Magistrate Jurisdiction for Purposes of Conditional Certification and Judicial Notice (ECF No. 18), and Motion to Amend the Pretrial Conference Order (ECF No. 20). (Id.)

---

[2] It is also Class Counsel's policy to keep detailed records of all out-of-pocket expenses incurred in litigation. (Selander Decl., ¶ 29.) A detailed record of Class Counsel's expenses, totaling $9,403.48 are attached as Exhibit 2. Of that amount, Class Counsel requests only $8,660.12.

Class Counsel also spent substantial time researching the legal claims and interviewing Plaintiffs and Rule 23 Class Members regarding the factual allegations in the Complaint. (Id.) Class Counsel reviewed and analyzed hundreds of pages of documents produced by Defendant and Plaintiffs, as well as thousands of lines of data to calculate the overtime and minimum wage damages in preparation for mediation. (Id.) Class Counsel met regularly to discuss the status of the case and strategy for moving forward. (Id.) In preparation for mediation, Class Counsel researched and drafted an extensive brief for the mediator and Defendant's counsel detailing the facts and law of the case, as well as the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. (Id.) Class Counsel attended the mediation and negotiated the settlement on behalf of the Plaintiffs and Rule 23 Class Members. (Id.)

After reaching the settlement agreement, Class Counsel spent significant time revising the proposed settlement allocations, as well as drafting, researching, and editing the settlement papers, including the Stipulation of Settlement and Release of Claims (ECF No. 52-1), and all papers submitted in support of the Joint Motion for Preliminary Settlement Approval (ECF Nos. 51-53). (Id.) After the Court granted Preliminary Settlement Approval, Class Counsel was responsible for disseminating the Settlement Notice. (See ECF No. 54.) Class Counsel went beyond the requirements of the Court's Order to ensure that the Plaintiffs and the Rule 23 Class Members were fully and accurately apprised of the settlement. (Selander Decl., ¶ 22(l).) These efforts resulted in each Plaintiff and 85% of the Rule 23 Class Members accepting the settlement. (Id.) Importantly, no Plaintiff rejected the settlement and no Rule 23 Class Member objected or opted-out. Finally, Class Counsel drafted, researched, and edited the papers submitted in support of the parties' Joint Motion for Final Settlement Approval, and will prepare for and represent the Plaintiffs and Rule 23 Class Members at the January 19, 2012 Final Approval Hearing. (Ex. 1;

Selander Decl., ¶ 22.) Class Counsel's work on this case and obligations to the Plaintiffs and Rule 23 Class Members will continue for months after the Court officially closes the matter. (Selander Decl., ¶ 22(n).) Once the settlement is approved, Class Counsel will be responsible for the dissemination of all settlement checks, answering questions from the Plaintiffs and Rule 23 Class Members, and ensuring that all settlement participants are notified of the deadline to cash or deposit their settlement payments. (Id.)

## ARGUMENT

**I. THE COURT SHOULD AWARD CLASS COUNSEL THE REQUESTED ATTORNEYS' FEES**

Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). The doctrine "is based on the equitable notion that those who have benefited from litigation should share in its costs." Sutton v. Bernard, 504 F.3d 688, 691-92 (7th Cir. 2007) (citing Skelton v. Gen. Motors Corp., 860 F.2d 250, 252 (7th Cir. 1988)). In deciding fee awards in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" Sutton, 504 F.3d at 692 (citing In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001)). In Taubenfeld v. AON Corp., the Seventh Circuit instructed district courts to determine the appropriate percentage to award "by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." 415 F.3d 597, 599 (7th Cir. 2005). Under this market-based approach, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a

7

similar outcome, for a paying client." In re Cont'l Illinois Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992). In light of these principles, Class Counsel's requested award of attorneys' fees and costs are reasonable and should be awarded.

### A. The Fee Agreement Between Class Counsel and the Named Plaintiff Supports the Requested Award.

Prior to initiating this lawsuit, Class Counsel entered into a fee agreement with the Named Plaintiff. (Selander Decl., ¶ 23.) The fee agreement entitles Class Counsel to 33 1/3% of any recovery, in addition to out-of-pocket expenses necessarily and reasonably incurred in the prosecution of the case. (Id.) The fee agreement in this case is commonly used by Class Counsel in similar class and collective action lawsuits for unpaid wages. (Id., ¶ 24.) The contingent fee rate is also consistent with the standard contingent fee rate in Wisconsin for similar lawsuits. (See Ex. 3;[3] Selander Decl., ¶ 24.) Moreover, the contingent rate is within the range of awards approved when courts in the Seventh Circuit apply the market-based approach. Retsky Family Ltd. P'ship v. Price Waterhouse LLP, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fees range from 33 1/3% to 40%); Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc., 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("a fee award of thirty-three and one-third (33 1/3%) in a class action in not uncommon."); In re Mexico Money Transfer Litig., 164 F. Supp. 2d 1002, 1033 (N.D. Ill 2000); Spicer v. Chicago Bd. Options Exchange, Inc., 844 F. Supp. 1226, 1252 (N.D. Ill. 1993)).

### B. Class Counsel's Attorneys' Fee Request is a Reflection of the Market and the Risk of Non-Payment Inherent in this Type of Litigation.

Large wage-and-hour class actions are, by their very nature, complicated and time-consuming. Any lawyer or law firm undertaking representation of large numbers of employees –

---

[3] Attached as Exhibit 3 is a collection of orders from the Western District of Wisconsin approving attorneys' fee awards of 33% or more in common fund wage-and-hour cases.

over 100 in this case – must be prepared to make a tremendous investment of time, energy and resources. And, due to the contingent nature of the fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. In litigating this case on a contingency fee basis, Class Counsel accepted that significant risk. (Selander Decl., ¶¶ 23-28.)

A number of factual, procedural and legal hurdles create continuous risk of no recovery for plaintiffs in wage-and-hour class actions. (Id., ¶ 26.) In addition to the inherent litigation risks of trial and appeal, as well as the distinct possibility of changes in the law during the pendency of an action, there are a number of challenges unique to this type of litigation and which were present in this case. (Id.) Specifically, Defendant intended to file a motion to decertify the FLSA collective, which if successful, would have forced each of the 47 opt-in Plaintiffs to re-file an individual action in order to pursue their claims. (Id.) Next, Defendant would have filed motions for summary judgment as to its liability (the application of the administrative exemption and/or outside sales exemption), as well as damages (willfulness and liquidated damages; whether the fluctuating workweek method of calculating overtime applied). (Id.) Further, in order to proceed as a Rule 23 class, Plaintiff would have had to prevail on a motion for class certification, which Defendant would have vigorously opposed. (Id.)

Assuming Plaintiff survived decertification and summary judgment, there was also the risk that at trial the jury would rule in Defendant's favor, or otherwise limit Plaintiff's damages. (Id.) Moreover, even if Plaintiff prevailed at trial, Defendant would have likely appealed, delaying the resolution of the case even further. (Id.) Given these risks, Class Counsel would not have accepted a similar case on anything other than a contingency fee basis. (Selander Decl., ¶ 27.) Likewise, it would have been impossible for Plaintiff to retain Class Counsel in any other

arrangement.  (Id.)  The contingency fee arrangement, however, allowed Class Counsel to prosecute and finance this litigation for as long as necessary, with the very real possibility that they would come away with nothing.  (Id.)

These risks are neither imaginary nor exaggerated.  Class Counsel has litigated numerous wage-and-hour class actions in which there was little or no recovery.  (Id., ¶ 28.)  While the three cases described in brief below are only examples, they sum up the extremely high risk involved in litigating wage-and-hour class action cases on a contingent fee.

> **Henry v. Quicken Loans, Inc.**   Attorneys from Nichols Kaster filed this FLSA overtime lawsuit on behalf of loan officers in May 2004.  The primary issue was (and remains on appeal) whether the loan officers qualified for the administrative exemption.  Over more than six years of litigation the parties filed and responded to dozens of motions, retained numerous experts, and conducted massive amounts of discovery (including expensive and time consuming discovery of electronically stored information).  The case was finally tried to a jury in March 2011.  After five weeks of trial and 2.5 days of deliberation, the jury returned a verdict for the defendant.  The plaintiffs are now in the process of appealing the verdict and other orders of the court to the Sixth Circuit.
>
> **Pontius v. Delta Fin. Corp.**   Attorneys from Nichols Kaster filed this FLSA overtime lawsuit on behalf of loan officers in November 2004.  Again, the primary issue was the exempt status of the defendant's loan officers.  After more than three years of litigation the defendant filed for Chapter 11 Bankruptcy relief.  The matter ultimately settled in bankruptcy court and Nichols Kaster recovered a small fraction of their actual fees.
>
> **Epps v. Oak Street Mortgage, LLC.**   Again, attorneys from Nichols Kaster represented loan officers seeking overtime pay under the FLSA.  The initial nationwide collective action was filed in February 2004, but after the motion for conditional certification was denied, the opt-in plaintiffs filed 24 separate collective actions in district courts across the country.  After more than three years of litigation, the defendant filed for Chapter 11 Bankruptcy relief and there was no recovery of attorneys' fees.

(Id.)

### C. The Requested Attorneys' Fee Award Reflects the Normal Rate of Compensation in this Market for Similar Litigation.

Fee awards in common fund cases are typically in the range of one-third of the recovery, regardless of whether the court applies the percentage or lodestar method to determine fees. 4 Newberg and Conte, Newberg on Class Actions § 14.6 (4th ed. 2007); Retsky Family Ltd. P'ship, 2001 WL 1568856, at *4; Teamsters Local Union No. 604, 2004 WL 768658, at *1; Meyenburg v. Exxon Mobil Corp., 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006). (See also Ex. 3.) This rate is consistent with Class Counsel's experiences within the Western District of Wisconsin and in other legal markets, where Class Counsel routinely enters into contingency fee agreements with compensation rates of 33 1/3%. (Selander Decl., ¶ 24.) Indeed, earlier this year, Magistrate Judge Crocker approved the same contingent fee rate in a very similar wage-and-hour case handled by Class Counsel. See Wittemann v. Wisconsin Bell, Inc., No. 09-cv-440 (W.D. Wis. March 14, 2011) (Ex. 3).

The requested rate is also commensurate with Class Counsel's extensive experience and expertise in wage-and-hour class actions like this one. As noted in the Court's Preliminary Approval Order, "Nichols Kaster's attorneys have substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions, and are well-versed in class action and wage-and-hour law. Other courts have repeatedly found Nichols Kaster to be adequate class counsel in employment law class actions." (ECF No. 54.) In light of Class Counsel's expertise, skill, and typical contingent fee arrangement, the requested award is reasonable.[4]

---

[4] Although the Seventh Circuit's market based approach does not require the Court to determine the reasonableness of Class Counsel's billable rates, Class Counsel submits that they are nonetheless reasonable in light of their extensive experience in wage-and-hour class action litigation. (Selander Decl. ¶¶ 3-14.)

### D. The Results and the Benefit Conferred Upon the Class Justifies the Requested Award.

This settlement is a favorable and beneficial result for a number of reasons. First, the Settlement brings substantial monetary value to Plaintiffs and the Rule 23 Class Members. As described in the parties' contemporaneously filed Joint Motion for Final Approval of Class Action Settlement, the settlement provides for full recovery of all minimum wages, five hours of overtime wages per eligible week, and liquidated damages for all Plaintiffs and participating Rule 23 Class Members. This recovery would not have been achieved without the extensive work and skill of Class Counsel. Second, the Settlement allows the Plaintiffs and Rule 23 Class Members to recover a large percentage of their claim while eliminating the risk that their claim could be reduced or dismissed in future motion practice, at trial, or on appeal. As noted above, Plaintiffs faced several procedural and factual hurdles before even proceeding to trial, any one of which could have reduced or eliminated their claims. Third, because the settlement was reached relatively early in the litigation, it provides the Plaintiffs and Rule 23 Class Members with immediate monetary benefits. This factor should not be underestimated given that, absent settlement, the parties would have sought additional discovery related to decertification, class certification, and the merits. Fourth, the settlement does not contain a reversion clause, resulting in a redistribution of more than $40,000 in unclaimed settlement funds.

Based upon the negotiated fee agreement in this case, a comparison with other similar cases Class Counsel has litigated, the normal rate of compensation in similar cases, the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, the uncertainty of recovery, and the results obtained, the Court should award Class Counsel reasonable attorneys' fees of 33 1/3% of the Settlement.

### E. The Settlement is Distinguishable from the Settlement Reached in <u>Sharpe v. APAC Customer Services, Inc.</u>[5]

The settlement in this case is based on the actual weeks worked by each Plaintiff and Rule 23 Class Member, their actual payroll data, and their actual statutory period. Again, the only factor that was applied equally across the board was the average number of overtime hours per week. It is also important to note that there is no reversion clause in this settlement. In other words, any unclaimed funds are *not* returned to Defendant. Instead, the funds are equally divided among the participating Plaintiffs and Rule 23 Class Members. This settlement is extremely fair to the Plaintiffs and Rule 23 Class Members and the allocation formula was the fairest possible method of dividing its benefits. After deductions for attorneys' fees and costs, the average recovery for the Plaintiffs is just under $9,100; the average recover for the Rule 23 Class Members is just under $6,600. Class Counsel submits that the overwhelmingly positive response from the Plaintiffs and Rule 23 Class Members evidences the fairness, adequacy, and reasonableness of the settlement.

Contrast this settlement with the one reached in <u>Sharpe v. APAC Customer Services, Inc.</u>, No. 09-cv-329-wmc (W.D. Wis.). There, the settlement agreement set out a complicated allocation formula with a minimum settlement payment of $30.00. (<u>See</u> <u>Sharpe</u> ECF No. 85-1.) The settlement agreement also contained a reversion clause, sending any unclaimed funds back to the defendant. (<u>Id.</u>) Moreover, the agreement awarded the plaintiffs' attorneys with 33% of the settlement fund regardless of the number of employees who actually benefited from the settlement or the amount actually paid. (<u>Id.</u>) Although the Court granted the motion for settlement approval, it reserved a ruling on the plaintiffs' attorneys' request for 33% of the

---

[5] All referenced documents and orders from <u>Sharpe v. APAC Customer Services, Inc.</u>, No. 09-cv-329-wmc (W.D. Wis.) are attached as Exhibit 4.

settlement.  (See Order dated June 16, 2010.)  After receiving additional information from the plaintiffs' attorneys, the Court issued an order granting attorneys' fees totaling 25% of the settlement fund, with an additional amount of fees tied to the settlement amounts actually paid out to class members.  (See Order dated Aug. 11, 2010.)  In explaining its decision, the Court stated "most importantly, the structured settlement here has the real possibility of rewarding class counsel handsomely, while minimizing the defendant's exposure, and yet providing a very limited pay-out to class members who opt-in." (Id.)

The settlement in this case is distinguishable.  First, there is no reversion clause.  As a result, more than $40,000 will be redistributed to the Plaintiffs and participating Rule 23 Class Members.  In Sharpe, those funds would have reverted to the defendant.  Second, the settlement provides a very real and substantial monetary benefit to the Plaintiffs and Rule 23 Class Members.  This is not a "coupon settlement."  Those participating in this case will recover a significant portion of what they could have recovered at trial.  Third, Class Counsel successfully obtained releases from more than 90% of the potential participants, and not a single individual rejected, opted-out, or objected.  In other words, Class Counsel's request for an award of 33 1/3% of the settlement fund is solely based on what Defendant will pay to the Plaintiffs and Rule 23 Class Members.  Fourth, the risk of no recovery was significant.  As the Quicken Loans, Inc. case demonstrates, litigation over whether loan officers are entitled to overtime pay can be lengthy, contentious, expensive, and risky.

### F. Reimbursement of Class Counsel's Necessary and Reasonable Out-of-Pocket Expenses Is Appropriate.

The settlement provides that Class Counsel may apply to the Court for reimbursement of $8,660.12 in expenses incurred in the prosecution of the litigation.  Among the costs that Class Counsel seeks reimbursement for are Court fees, mediator fees, Class Counsel's travel and

lodging expenses for the Milwaukee mediation, process server fees, postage, copying, advertising, and electronic research fees. (Ex. 2; Selander Decl., ¶ 29.) Class Counsel's request for reimbursement of these expenses is appropriate, as they were necessarily incurred in order to litigate and settle this case.

## CONCLUSION

Class Counsel's attorneys' fee request is fair and reasonable. From the inception of this case, Class Counsel has thoroughly, yet efficiently, investigated and prosecuted the claims without any compensation. As a result of Class Counsel's efforts, more than 100 employees will recover a significant portion of their unpaid wages. Class Counsel's request is in line with awards in similar cases in this jurisdiction, and with the market for similar services in the State of Wisconsin. For these reasons, and those stated more fully above, Class Counsel respectfully requests that the Court award attorneys' fees in the amount of $425,000, and reasonable and necessary expenses in the amount of $8,660.12.

Respectfully submitted,

Dated: December 2, 2011         **NICHOLS KASTER, PLLP**

s/Timothy C. Selander
Michele R. Fisher, MN Bar No. 303069
Timothy C. Selander, MN Bar No. 0387016
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
Email: fisher@nka.com
          selander@nka.com

COUNSEL FOR PLAINTIFFS AND THE CLASS